| IN THE MATTER OF THE SEARCH OF THE RESIDENCE OF DEMETRIUS HUGHES, AKA "MEAT HEAD," WHICH IS LOCATED ON THE LEFT SIDE DUPLEX OF 1809 RUBIO STREET CHATTANOOGA, TN WHEN FACING THE RESIDENCE FROM THE STREET. | Case No. 1:17-MJ- 118<br><br>**Filed Under Seal** |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University, and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant of the residence and premises located at the following location: 1809 Rubio St. Chattanooga, TN, the residence known by your Affiant to belong to Demetrius HUGHES, AKA "Meat Head." HUGHES' residence is located on the left side of the duplex when facing the structure from the street. Your Affiant has obtained the information contained in this affidavit through observations, interviews with fellow law enforcement officers, and information provided by an ATF Confidential Informant (CI) throughout the course of this investigation. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the Court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular

2 of 9

Case 1:17-mj-00118-SKL   Document 4   Filed 04/20/17   Page 2 of 9   PageID #: 10

substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages that may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them to keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar

data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones", all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based upon training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. In your Affiant's training and experience, users of and traffickers in controlled substances, when hiding or transporting controlled substances or cash, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, vehicles, and in public or common areas which can be kept under their observation. Narcotics traffickers will also often place assets in names other than their own to conceal their assets from law enforcement.

7. Your affiant is aware that narcotics traffickers sometimes utilize multiple "stash locations" in an attempt to keep large quantities of controlled substances separate. Based on your Affiant's training and experience, your Affiant knows this to be done so that law enforcement cannot seize all of the controlled substance at one time if law enforcement is alerted to the location of a single "stash location." This is also done in an attempt to secrete controlled substances from non- law enforcement personnel in an attempt minimize the potential of a robbery by individuals seeking to take possession of controlled substances during armed robberies, home invasions, or routine thefts.

8. It has also been your Affiant's training and experience that those who use or traffic in controlled substances, especially when law enforcement appears, will attempt to physically separate themselves from the controlled substances. They often do this by placing a controlled substance in a "neutral" location. They often employ intermediaries as couriers and drivers, to store drugs or conduct transactions. These intermediaries often include associates, but may also be extended to include women, juveniles, or older people. Traffickers will use these individuals to transport controlled substances or otherwise assist the operation. These "mules" (as they are sometimes called) hold or transport the controlled substances or cash, allowing the dealer to stay "clean." Traffickers will also often "hand off" incriminating evidence to another person if confronted by law enforcement. In sum, these methods are used to attempt to insulate traffickers from risk of detection and apprehension by law enforcement.

9. Based upon your Affiant's training and experience and the facts as set forth in this

affidavit, there is probable cause to believe that a violation of Title 21 USC § 841(a)(1) has been committed by Demetrius HUGHES, AKA "Meat Head."

## PROBABLE CAUSE

10. Your Affiant is currently participating in an investigation involving illegal drug trafficking in the Eastern District of Tennessee. An investigation conducted by the ATF and the Chattanooga Police Department (CPD) has identified Demetrius HUGHES, AKA "Meat Head," (hereinafter referred to as "HUGHES") as being responsible for the distribution of large quantities of powder cocaine and cocaine base throughout the Chattanooga, TN area. The investigation was initiated by the development of information given by an ATF CI. The CI has previously provided reliable information regarding individuals selling narcotics. The CI has also provided information regarding criminal activity to include individuals selling narcotics, which has been independently corroborated by other agents/officers as accurate. Accordingly, your Affiant submits that the CI has proven reliable.

11. In March 2017, the CI provided ATF special agents with information that HUGHES frequently sells cocaine base and powder cocaine throughout Chattanooga, TN. The CI stated that he/she has been present when HUGHES has previously sold cocaine base and powder cocaine, and that HUGHES had recently offered to sell the CI cocaine base and powder cocaine. According to the CI, HUGHES is a member of the Gangster Disciples street gang in Chattanooga, TN and is also known to associate with and supply other gang members in the Chattanooga, TN area with narcotics.

12. Since March 2017, the CI has made at least four controlled buys from HUGHES of cocaine base and powder cocaine from inside HUGHES' residence, which is part of a duplex located at 1809 Rubio St. Chattanooga, TN. The residence is situated on the left side of the duplex when facing the residence from the street. The most recent controlled purchase, which occurred from HUGHES' residence within the past 72 hours, was for a resale amount of powder cocaine.

13. During each controlled purchase, the following controls were put in place:

    a. Prior to each controlled purchase, under the direction and control of your Affiant, the CI met with your Affiant at a pre-determined location and was physically checked or searched by your Affiant or another law enforcement officer for any type of contraband. No contraband was found on the CI in each instance.

    b. The CI was provided with official government funds to purchase narcotics from HUGHES.

    c. The CI was outfitted with an audio listening device, which was monitored by your Affiant during each controlled purchase.

    d. Law enforcement maintained a constant visual of the CI and his/her vehicle from the pre-buy location to HUGHES' residence for each narcotics purchase.

    e. Following each controlled purchase, the CI was surveilled by your Affiant and assisting law enforcement to a pre-determined location where law enforcement immediately retrieved narcotics and the audio listening device from the CI.

    f. A constant visual of the CI was maintained at all times. The CI was additionally searched or checked for contraband by your Affiant or another law enforcement officer following each controlled purchase.

14. During each of the aforementioned controlled purchases, the CI was observed by your Affiant and other assisting law enforcement officers entering the left side of 1809 Rubio St. Chattanooga, TN, for each controlled purchase. During each operation, the CI purchased a resale amount of either cocaine base or powder cocaine from HUGHES from inside the residence.

15. In addition to the controlled purchases, the CI stated to your Affiant that HUGHES told the CI that the left side of the duplex located at 1809 Rubio St. Chattanooga, TN was his residence. Surveillance conducted by law enforcement assisting with the operation has also verified a beige Chevrolet Avalanche, TN Dealer Tag 367-06D, to be frequently parked in the driveway of the residence at various times of the day as well. The beige Chevrolet Avalanche is known to be driven by HUGHES and has been driven by HUGHES to conduct a narcotics transaction with an ATF CI.

16. WHEREFORE, based upon the facts detailed above, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that the premises, including the residence, outbuildings, vehicles, and curtilage described herein will contain evidence of drug trafficking, particularly of cocaine base and cocaine powder in violation of Title 21, United States Code, Section 841.

These fruits, evidence and instrumentalities of crimes against the United States of America are described with particularity in Attachment B.

## REQUEST FOR SEALING

17. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Adam Baldwin/ATF Special Agent

Sworn to and subscribed before me this 20 day of April 2017.

_____
Susan K. Lee
United States Magistrate Judge